Good morning, Your Honor. I'm here on behalf of Appellant Samuel Hosford. Law-abiding gun owners in this country face an unacceptable choice if they want to sell a firearm. They either have to go through the arduous process of obtaining a federal firearms license or risk prosecution and permanent loss of their Second Amendment rights. Because this Court has typically refrained from opining on the scope of the Second Amendment unless it's necessary to the decision, I thought it might be productive to start first with the language in the Heller decision about the presumptively lawful regulatory measures, because I know the government relies heavily on that. And it is our position that that does not apply in this case. In virtually every published decision in this circuit since Heller, the government has tried to argue that that presumptively lawful language applies. Beginning in this Court's decision in Chester, which was the first major decision since Heller, the government tried to argue that domestic violence misdemeanant was essentially like a felon, and so the presumption should apply. And this Court rejected that approach and said the government has the burden of justifying its regulation, and using Heller's list of presumptively lawful regulatory measures to find this provision unconstitutional by analogy would relieve the government of its burden. Or, sorry, constitutional. And then this Court's decision in Mascandiara was another example in which this Court closely parsed that language. In that case, an individual was convicted of carrying a loaded pistol in a national park, and the government in that case... It would have been inexplicable for the government not to rely on that language in Heller, when it says nothing will be taken to cast doubt on laws imposing conditions and qualifications in the commercial sale of arms. Why isn't a license nothing more than a condition? Well, Your Honor... These licensing schemes are absolutely essential to any kind of firearms regulation. I mean, we have state laws with licensing and federal laws with licensing, and you get a license to carry a firearm in a particular way, you get a license to sell a firearm in a particular way. So if we were to rule a license was something other than a licensing scheme was something other than a condition, we'd just be tearing the heart out of firearms regulation, which may be a satisfactory result from your standpoint, but... Well, Your Honor, I respectfully disagree. And, again, if we look at the analysis that this Court applied in Mascandiaro, it would be natural to assume why carrying a loaded gun in a national park would be considered a sensitive place, but this Court refused to make that assumption and instead applied the two-step analysis. And the Sixth Circuit, in an en banc decision from just last week, which I apologize, I just found out about too recently to submit a 28-J letter, but in its decision in Tyler v. Hinsdale County Sheriff's Department, there was an individual who had been previously committed to a mental health institution. And the government argued in that case, well, this falls under that presumptive language in Heller about individuals who are mentally ill. And the Court said, no, this is not necessarily an exact overlap. Individuals who have been previously committed, that doesn't necessarily fall in the language. You're dealing with a far broader question. It seems to me, whether it's under Second Amendment grounds or whatever, that you want us to rule the whole licensing scheme unconstitutional. To me, that seems revolutionary and I would respectfully suggest that our superiors on the Supreme Court might say to themselves, what are we doing? Well, Your Honor, and I'm certainly not trying to suggest that the entire licensing scheme is unconstitutional. That's far broader an issue than what we have here. I don't know. I don't understand how you could be suggesting anything else. You've leveled a Second Amendment attack at it and a Commerce Clause attack at it and a Vagueness Clause attack. You want us to do away with the thing. No, Your Honor, that's not our argument at all. Our argument, we do not dispute that there are certain individuals who should be subject to licensing regulations. And we are not challenging those regulations, which are set forth in 18 U.S.C. 923 and then the U.S. corresponding CFR. And they set forth those extensive regulations. Our argument is that applying all those regulations and burdens, which include submitting to unannounced inspections and submitting to interviews and reporting requirements and maintaining records for your lifetime, these are very onerous requirements. And to apply those requirements to every individual who wants to sell a firearm, that violates the Constitution. I understand your attack to be going after any particular interview or form. I understand reading the briefs, you were swinging for the fences. And you're going after this thing wholesale and also is applied, which would be, if it's unconstitutional, it's applied to your client, it'd be unconstitutional, it's applied to no telling how many people. But I didn't understand this to be a particularized challenge or an undue burden challenge for a particular regulation. I think you're going after this with a chainsaw. Well, Your Honor, our position is that the private sale of weapons intrastate between non-prohibited persons is included within the Second Amendment and can't be regulated per se. Well, I don't think the statute, the statute, it seems to me, is not at all inconsistent with what you just said. But there is a qualifier. It includes persons who devote their time, attention, and labor to dealing in firearms. So the government has to prove that before anyone is convicted for illegally selling firearms without a license. But that's a whole different category of people than the broader folks, which you seem now to be advocating for. A private sale between two individuals, it seems, would not be covered under the statute. Well, Your Honor, the problem is, number one, that there is a significant gap in the statutory language for individuals, for example, who are engaged. I agree with Judge Diaz's question because that language is engaged in the business. It has to be one person selling to another. They're not engaged in the business. But here, what you have is somebody who's selling six or seven. He has a regular commercial relationship. He's selling six or seven firearms to a buyer. He's not using these firearms for a hobby or whatever, but these are paid sales and he sells it to the buyer. They meet in a prearranged place, and he sells it to the buyer immediately after meeting with his supplier. And there's a pattern of it. He does it over and over and over again. And so it's hard to see how we could exempt Mr. Hosford without putting a huge dent in the overall scheme. Well, there's two things I would like to say to respond to both of Your Honor's questions. Number one, even though the language seems that it would only apply in individuals who really have all the indicia of a business, the way it's been applied and the way it's been interpreted, including by this administration in a recent executive order, this can apply to a person who is engaged in as few as one or two sales of firearms. And so that's problem number one. Number two, in the ATF, in its own application, says if you wish to sell only at gun shows, you do not need to obtain a federal firearms license. There's no restriction on how many times you can sell. And so this is, you know, for an individual like Mr. Hosford who, you know, wishes for whatever reason to sell a small number of guns, they're forced again in this unacceptable choice of do I face prosecution or get a license? Here's the language. It says the term engaged in business means as applies to a dealer in labor to dealing in firearms as a regular course of trade or business with the principal objective of livelihood and profit through the repetitive purchase and resale of firearms. And then it says this, and this is what the jury's applied. It says this term shall not include a person who makes occasional sales, exchanges, or purchases for enhancement of personal collection. In other words, they're talking about a very certain class of commercial, repetitive commercial dealings. And that's, you know, that's part of what you want to unravel. I mean, it seems to me quite a sweeping attack and something that would throw the entire federal licensing scheme into question, serious question. And I don't think any court's gone that far. Your Honor, the problem with the language that Your Honor just cited is, although I agree that it was certainly the intent of the parties to only target individuals engaged in the repetitive business of firearms, you know, that law was, that language was crafted particularly to protect individual gun owners who were being harassed and targeted inappropriately by ATF under the Gun Control Act. So I don't think we can be, we have to be mindful of the dual purposes in the Firearm Owners Protection Act. Those are not the facts we have here. Your Honor, I respectfully disagree. I mean, the statutory language creates a very It exempts occasional sales if it's for a hobby or to sell off a personal collection. But it doesn't say It certainly does exempt that. It says engaged as applied to a dealer or person who devotes time, attention, and labor to dealing in firearms as a regular course of trade or business with the principal objective of livelihood and profit through the repetitive purchase and that seems to me to exclude the person that makes an individual sale, because they're not doing that as a regular course of trade or business with the principal objective of livelihood. I mean, Congress was very careful to limit these definitions to repetitive commercial dealers. And they're not after the individual, and of course, Hossford certainly isn't, you know, just engaged in a one-off sale. But I mean, this is, an immense amount of attention was given to these laws. And an immense amount of attention was given to these definitions. And I understand, Your Honor, but if you, that first line, the language that Your Honor just read needs to be read in conjunction with the language that follows, which specifically exempts occasional sales that are done for a hobby to enhance a collection or to sell off your personal collection. There is a gap. There's a statutory gap there. Now, I recognize there is strong interest on both sides in negotiating this language. And where in the gap does your client fit? Assuming you're right, there is a gap. How is your client harmed by being in this nebulous territory for interpretation to make it inappropriate for your client? Because, Your Honor, this is going to chill a substantial amount of constitutionally protected activity. An individual like Mr. Hossford, who occasionally sells firearms, has to decide, am I going to have to go through the process? And if Your Honor wants to look at what's involved with being a federal firearm licensee, I can cite some of those provisions for you. But that's a tremendous burden or risk prosecution as a felon and then losing your Second Amendment rights forever. And that's, it's chilling a substantial amount of conduct. And when we have our own Attorney General saying that this can be applied to as few as one or two purchases, what is an individual gun owner, you know, a law-abiding gun owner? We don't have any question here. Mr. Hossford was not a prohibited person. He was not selling prohibited guns. And he was an individual who can sell an item of property in a parking lot just as well as I can sell a baby stroller. There is, this is, you know, this gap creates an unacceptable risk that people are going to be chilled in exercising their Second Amendment rights. And the district court said, well, you know, Mr. Hossford's not prevented from selling. He just has to get a license to do so. And I respectfully submit that that's not an acceptable response for individuals who want to engage in small numbers of private sales. I think that's protected under the Second Amendment. And you consider what happened here a small number of private sales? Yes, Your Honor, I do. If we look at the number, and I recognize that there are many different views about gun ownership in this country, but I think we need to heed Heller's admonition that our assessment of the value of a particular right is not appropriate. This is, this is a fundamental right, and there are three times as many guns in this country as there are people. And to tell all of those people, if any time you want to sell a gun, you've either got to get a license or face the risk of prosecution. It's not true that not any time you want to sell a gun. Here the facts are, there were, you know, each of the transactions, there were eight different sales here, five transactions. You would contact the buyer and offer to sell particular firearms. It's probably just the tip of the iceberg here. And just before the meeting, he obtains the firearms for a supplier in a parking lot. He then goes to another parking lot and sells to the buyer. He earns at least $100 from each transaction. He represents, he had multiple suppliers, and then he could obtain a machine gun for the buyer. Your Honor, if I may respectfully, we pointed out in our brief that those facts were not submitted to the district court. We don't think it's, we don't think it was appropriate for the government to submit them. They were not before the district court. They were not part of the record before the district court. There's a conditional plea here. You've got a plea to something. Well, Your Honor, those facts actually that Your Honor was reading are not from the conditional plea. They were facts that the government included from the co-defendant's plea agreement and from a search warrant. Again, these were not before the district court. At least the search warrant was not offered. The government didn't offer any exhibits. These facts were not considered by the district court. What the court relied on were the facts contained in the indictment. Now, Your Honor, I'm sorry, I see that I'm passing my time. It has to be a factual basis for your plea. Yes, Your Honor, but that was a conditional plea that was entered after, you know, the motion was decided. And in any event, we think the facts that the government otherwise relied on or not shouldn't be considered by this court. All right. Thank you, Ms. Delzick. Ms. Brusca. Good morning, Your Honors. On behalf of the United States, I'm Dana Brusca. I would say... Can you pull that down just a little bit? I want to make sure I hear you. Thank you, Your Honor. So I would say, although there are no easy Second Amendment cases, I agree with Your Honor that as applied to the facts in this case, we think it's relatively straightforward. Mr. Hausford was... Are the facts before us? I'm sorry. The allegations in the indictment are rather straightforward. The indictment alleges that he sold on five occasions eight firearms, that he was knowingly and willfully engaged in the business of firearm dealing for profit. And, you know, in terms of the vagueness argument, which seems to be where the defendant was clear, we would say that the court should not engage in sort of the hypothetical, what about this gap? What about that gap? If the law is clear as applied, then a facial challenge won't stand. What do you say about learning counsel says that some of those facts are not before us as to parking lots and back and forth and all those things? Certainly you don't say five sales alone sufficient, right? You wouldn't say that, would you? I would say that what the indictment is required to allege under Rule 7 is the language of the statute and not more, which is what we did here. We also laid out five specific examples of firearm sales, but the government was not required to allege in its indictment every single fact it could prove at trial. I don't understand that. You didn't have a trial. What did you proffer to the district court as to what the facts would have been and what was pled to? Was it in the PSR? Was it presented to the district court that would embellish the facts that would support the indictment? You're right. You don't have to put your case in the indictment, but you would have a case. And when you come here, presumably you would have had some facts that would be the basis for the valid acceptance of the plea agreement, although we know it's conditional. So what are the facts before us that would be the basis beyond five sales here? Well, in the indictment, Your Honor, on page 13 of the J.A., for example, the indictment alleges that the defendant sold, picked up each firearm in a parking lot, sold it the same day in a parking lot. Often they were concealed in a box or a bag, for example. So I think there was plenty of factual basis. Concealed in a bag or a towel or a box. It specifically alleges five instances in eight different firearms. With respect to the facts. Trying to conceive of what other facts he would be pleading to. Well, again, there's a broader matrix of facts, I think, underlying a prosecution case. That's the essence of it. Correct. That's the essence of it. And you think that's sufficient to say it was commercial? It was those acts are susceptible to a requirement that they get a commercial license for selling. In addition to the allegation that he knowingly and willfully engaged in the business of firearm dealing. Yes. You say he pled to that fact. He pled to conspiring to engage in the business of firearms dealing. The whole purpose of the conditional plea was to set up for an appeal. Based on these facts, is there a Second Amendment violation? Is there a vagueness problem? Is there a commerce cause problem? But the appeal was set up in the conditional plea. The purpose of the conditional plea was to set up these legal challenges. That's correct, Your Honor. And to tee them up on these facts for an appeal. And as I say, this is coming in and it's swinging for the fences. They want this whole scheme to be severely impaired. I would agree with you, Your Honor, that the basis for a conditional plea is to assume the facts in the indictment or in the plea agreement here. The two were basically, in all pertinent details, identical. The defendant cited the plea agreement and their relevant statement of facts. But the question is assuming those facts to be true. And this law is pre-Heller, right? I'm sorry, Your Honor. This is all pre-Heller, this act? This act was adopted pre-Heller. That's correct. So now post-Heller, we now know it's an absolute fundamental right for someone to have weapons in their home, correct? That is what Heller held, Your Honor. I would agree. So since we know that now, then does the calculus change? If you have ten people living in your home now and they're all 18 years old now, you have to have more latitude to buy guns, don't you? Since each person would have a right. In a different context, let's say I'm the designated purchaser for my family. I'm the wife, so I purchase guns, so I got more people. Does that change that you have a right to protect your home now in terms of how many guns might constitute now commercial as opposed to it used to be a different matter? Now we know everybody in the home has a right, a constitutional right to protect their home. If they're 18 years old and you have ten people living in your home, isn't that going to increase your purchase or your transaction, but it's still for a personal sense of protecting your home now post-Heller, correct? Your Honor, I would agree that post-Heller there is a right to possess firearms for self-defense in the home. I don't think that Heller held there was a right to sell firearms writ large, but even if it didn't, this statute doesn't go so far as to prohibit any sales from a personal firearm collection. So if you were, in fact, selling your own firearm. But don't you have to look at it in a different light? It's like a car. You have a right to buy a car, but to trade cars in. So the more people you have in the home that have a right to own a gun, when you have likely you trade up and say, hey, this Tech 9 doesn't work anymore. I want a Glock. I want that. Doesn't that change? I mean, because I'm just saying in terms of not taking a position one way or the other about guns, but in terms of post-Heller, we now know that this is the law of the land. So doesn't that change the calculus? That's why I was asking the question about five guns. What does five guns mean? It may have meant something more different than we didn't know. But now we know. You know, you persecute it more if you have more people in your home and family. I don't think it does change the calculus at all, Your Honor, because the statute explicitly says that you will not be engaged in the business of firearms dealing if you are selling all or part of your personal collection of firearms. So if you're selling the guns you have in your home for self-protection, then you are not within the ambit of this statute. It's an interesting question, but the government's position here is based upon the language of Heller. So it says, Heller says nothing herein should be taken to cast doubt on laws imposing conditions and qualifications in the commercial sale of arms. So yes, the calculation has changed since Heller, but your position goes directly from language in Heller. You've analyzed this statute in terms of Heller, and there may be other as-applied challenges down the road that would be more persuasive or appealing than this one. And the Chief Judge has laid out some of those, but those may be as-applied challenges for a later date. But the question here is this language about conditions and qualifications in the commercial sale of arms, and you've analyzed those two critical words, conditions and commercial. That's correct, Your Honor. We would agree that the statute in this case, it's a licensing requirement. It's the same type of licensing requirement that's been used for a very long time in this country and in England. We don't think it imposes anything more than that. Is Congress attempting to amend this statute after Heller? Not that I'm aware of, Your Honor. But we would also say it is for the reasons that you've stated. It's about the commercial dealing of firearms, and certainly in more this Court held that language has some meaning and it has some bearing on the analysis of what you do in a Second Amendment case, and it explicitly left open the possibility that later as-applied challenges could be brought. Earlier today, opposing counsel noted that the Sixth Circuit sitting en banc recently did not apply the presumption. That's not correct in my view. I think the case held the presumption did apply to people who were mentally ill as a facial matter, but in that particular case, as-applied, the individual could bring his challenge. So I think... Would you have the same case if the person was selling five guns out of their trunk? Five different instances. Go to their trunk, sell one in this parking lot, go to another parking lot, sell five. Would that be commercial? Based on those bare facts, Your Honor, I would say yes, it would be. You know, there could be an explanation for it. They're really part of a personal collection or there was some other motive. But if there was alleged that he had sold or she had sold five firearms. That's a problem, too. That's one of the problems with collection. That's sort of like an imperial congressional word. It suggests almost like, well, those are people who have cabinets and you open them up and they have a Remington from 1715 and all of those things. It's rather an elitist-type word anyway. But whatever collection means. A collection means you own them, they're my collection. Whether they're in a cabinet, I've got five guns, that's a collection. So the question is, if I'm taking my collection from my home, that's for my constitutional right to protect, and I'm selling them one at a time and I make a profit, you're saying that becomes automatically commercial? No, that's not what I'm saying, Your Honor. Well, what are you saying then? There could be a close factual case about whether or not particular firearms were part of somebody's collection, how long ago you purchased them. But as a general matter, people understand what it means. How does how long ago you purchased them have anything to do with collection? Collection is a quantitative, not a qualitative question. It's a quantitative question. What does temporal ownership have to do with collection? Well, I would disagree, Your Honor. Disagree that that's not a quantitative, that's purely quantitative? I think it's both, Your Honor. It could be. How many years do you have to hold it to be a collection? Well, I think that would be an as-applied case if you wanted to make the argument you really owned a gun to a jury for 10 minutes before you sold it. That certainly would be a question that a jury could take up. I think the distinguishing thing in this case probably is that you know the source here under the facts, the quick purchase there and then the quick sale, what makes it kind of different. But if you take that out of it, I'm not sure. The question of does it come from my collection or is it just upgrading my family's constitutional right to own weapons, which I would think you have a right to upgrade, don't you think? Under Heller, when you say that you have a right to own a gun in your home, you certainly have a right to own a better gun in your home next year, don't you? Do you think you can trade in? Yes, Your Honor. All right, go ahead. I recently traded up for an SUV. My colleague makes an excuse me. I didn't mean to interrupt you. No, no, I'm finished. I was going to say I think the Chief Judge makes a good point, but I'm not sure it's one that you would disagree with because down the road there could be more appealing challenges that were more related to self-protection in the home, and your position isn't aimed at those. First of all, you'd be crazy to bring that kind of case if somebody was buying for protection of family members in the home. Second of all, the courts are going to look at that and say this as applied challenge comes too closely to the core of Heller. And third of all, a jury is not going to convict on the instructions that someone was engaged in in commercial dealings if he's purchasing for the home. So you've got all kinds of roadblocks to your ever bringing a case where someone's doing what they have a Second Amendment right to do, and that is purchasing firearms. In other words, there are as applied challenges that could really resonate with the court and the jury and others. We absolutely agree, Your Honor. I think the facts of this case, it is clear that the statute applies. Here, my position is you can't rule in Hossford's favor without striking a mortal blow. Without striking a mortal blow and without assuming the truth of the allegations and the indictment, which you have to do at this phase. So I think both of those things, Mr. Hossford's case, he's not alleged anything to bring his case outside the ordinary sort of seller, dealer engaged in the business of firearms dealing. It's a mouthful. And so, yes, we would agree with that. I think unless the panel has further questions, I will. Thank you, Mr. Hossford. Ms. Stelzig. Ms. Stelzig, isn't this a case that it's, and no question, you properly preserved the question on appeal in terms of guilty plea, conditional guilty plea. But isn't this a case where you almost have to try below and cite all of the reasons and those kind of things? Because here, aren't you stuck with the conspiracy, the commercial aspect, and the sales? What do we do with those facts in the indictment here? In the context, you leave those up if it had been just a straight whatever. Anyway, I'm just saying, doesn't it make it problematic for you in terms of these facts? Some of the things, the gap you talk about in those statutory questions, because you even raised a facial question here, too, as well as applied. So it's difficult, isn't it? We have these facts from the indictment you play to factually. Go ahead. Your Honor, it is difficult. I think any individual who is raising a constitutional challenge in a pretrial stage, there's a lot of factors that go into a decision whether or not to take a very appealing plea offer. And the risk of a jury trial, I respect. I think Judge Wilkinson's respect for our jury system is admirable, but my client's experience is often different in terms of how juries can come out. It's a very unpredictable exercise. I agree. There's a range of results that can come out. But I do think at a minimum we shouldn't look at facts beyond what the district court had at the time that she made the motion, when she decided the motion to dismiss. And, you know, we don't think that that is sufficient. Would the record be better if we had put in some of the facts about his co-defendant that he was selling from his collection and it was an elderly friend? Sure. But we don't have that. I did want to respond just to a few points. I respectfully disagree that our position is that we are swinging for the fences. One of the arguments that we made in the district court, Judge Wilkinson, was that in the alternative the court could construe this statute narrowly to avoid small numbers of private sales. And we also disagree with this notion that every sale for profit is automatically a commercial sale. This was an argument that the government made. That's not what this case doesn't reach as far as saying every sale for profit is a commercial sale. And Congress didn't write the statute that way. You keep the – you pled to a set of facts. They're in the indictment. The conditional guilty plea had to mean something. All right. So you tee up the legal challenge and then you come up here and the basis of your argument is, oh gosh, think about this one person who sells to another person and realizes a profit. Let's say he bought the gun for a certain price and he sold the gun for a certain price. Does that run afoul of the statute? No. The indictment would be, if a prosecutor were foolish enough to bring that case, it would be dismissed. The indictment would be dismissed on Rule 29 in a second. And Congress went to great lengths not to ensnare that kind of person. I'm not going to bore you by reading the definition of engaged in business that Congress drafted, but it envisions a whole lot more before you can run afoul of this statute than just an individual sale. You're so far out of the language of that? Your Honor, I see my time is up. May I respond to the question? Certainly. Unfortunately, that is not the way that the law is being applied. The government's brief cites the cases in which as few as two in four sales have been affirmed. That's not our case. Well, we have five transactions in our case, so we think it's very close. Thank you. Thank you so much. Do you want a break? Let's take a brief break. I'm in my 70s. We're going to take a brief break, and then we'll come down and recounsel.
judges: Roger L. Gregory, J. Harvie Wilkinson III, Albert Diaz